Filed 2/14/14  P. v. Reeves CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B239403 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA048723) |
| v. | |
| RONALD C. REEVES, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County. Lisa M. Chung, Judge. Affirmed.

Gloria C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

A jury found appellant and defendant Ronald C. Reeves guilty of making criminal threats, and also found true that the threat was a hate crime and defendant personally used a deadly weapon in making the threat. In a bifurcated proceeding, defendant admitted four prior strikes, as well as prior prison terms. Defendant was sentenced as a third-strike offender. Defendant contends there is insufficient evidence to support his conviction, the prosecution having failed to prove beyond a reasonable doubt that a punishable criminal threat was made. Defendant further contends the trial court erred in denying his *Romero*[1] motion. We conclude there is substantial evidence in the record supporting the judgment, and no basis for disturbing the trial court's exercise of discretion in ruling on defendant's motion. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At approximately 1:30 p.m. on March 29, 2010, George Harris walked to the home of his friend, Cameron Thompson, to use Mr. Thompson's phone because his own phone was not working. As soon as Mr. Harris arrived at his friend's house, he immediately heard defendant, who lived next door to Mr. Thompson, "yelling out racial slur[s]." Defendant, who is white, was standing at the front door of his house. He yelled "N----r, I'm – I'm going to kill you." Mr. Harris, who is black, was scared by defendant's outburst, but did not immediately notice any weapons in defendant's hands. Upon opening his door, Mr. Thompson also heard defendant "yelling racial slurs."

Mr. Harris then saw defendant step out of his front door carrying a "hatchet" in his right hand and a "sword/knife" (with a 9- to 10-inch blade) in his left hand. Defendant said, "I'm going to kill you n----r" while "throwing" his left hand with the knife "up in[to] the air." Defendant approached to within about 10 feet of Mr. Harris, at which point Mr. Harris turned and ran, because he feared defendant was going to try to kill him.

---

[1] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

Mr. Harris hid behind a car parked on the street and called 911.**2** He told the 911 operator that defendant came out of his house with "a big knife and an axe," saying "n----r," and "f---k I'm gonna kill all of you." Mr. Harris also told the operator defendant had "[come] at [him] with a knife." Mr. Harris told the operator he was "still in fear" as to what defendant might do, as he had nothing with which to defend himself.

After speaking with the 911 operator, Mr. Harris went back up to Mr. Thompson's house to wait for the deputies to arrive. From that vantage point, Mr. Harris saw defendant leave his home and walk toward his SUV, with the knife in his belt and the axe still in his hand. Mr. Harris was not verbally threatened at this point, but remained scared because of defendant's "demeanor" and his "actions." Mr. Thompson came outside and waited with Mr. Harris for the deputies to arrive, keeping watch on defendant at the same time. They believed defendant put the weapons in his SUV and then went back into his house.

Jason Elizondo, a deputy with the Los Angeles County Sheriff's Department, responded to the scene, along with several other deputy sheriffs, and interviewed defendant, Mr. Harris and Mr. Thompson. Defendant told Deputy Elizondo he had been holding an axe and a knife during an argument with neighbors. He denied calling them "n----rs" but said that he had called them "a--holes." Defendant said he had gone to his car and then went back into his home, until he was called out by the deputies upon their arrival. A deputy found the axe sticking out of the pouch behind the driver's seat of defendant's car. Deputy Elizondo reported defendant was able to communicate with him clearly and did not appear to be confused, or incapable of understanding what he and the other deputies said to him.

Defendant was charged, by information, with three counts. In counts 1 and 3, defendant was charged with making criminal threats against Mr. Harris (Pen. Code,

---

**2** The record reflects Mr. Harris had a cell phone with him that, at the time, was only capable of making emergency calls to 911 but otherwise did not have a functioning call plan.

§ 422).**3** In count 2, defendant was charged with assault with a deadly weapon (§ 245, subd. (a)(1)). As to counts 1 and 3, it was specially alleged defendant personally used a deadly and dangerous weapon in making the criminal threats (a bayonet and an axe, respectively). (§ 12022, subd. (b)(1).) It was also alleged as to all counts that the crimes in question were hate crimes, in violation of section 422.75, subdivision (a). It was further alleged defendant had suffered four prior felony convictions that qualified as serious and/or violent felonies within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and which also qualified as five-year priors pursuant to section 667, subdivision (a)(1). Lastly, it was alleged defendant had suffered five prior prison terms (§ 667.5, subd. (b)). Defendant pled not guilty and denied the special allegations.

The court appointed two experts to evaluate defendant's competence to stand trial. Following receipt of the report finding defendant competent, the case proceeded to a jury trial in September 2011.

Mr. Harris testified to the facts set forth above. An audiotape of his call to 911 was played for the jury. Mr. Harris also testified to having seen defendant in the neighborhood before the incident, talking or yelling to himself, including using racial slurs, but defendant had never previously "come at" him with a weapon. Deputy Elizondo and Mr. Thompson also testified to the facts set forth above regarding the incident of March 29, 2010. Mr. Thompson attested to the fact that he had previously witnessed defendant screaming, "Kill all n-----s and Mexicans and child molesters." Defendant's outbursts normally ranged from around 5 minutes to 45 minutes in length.

Defendant did not put on any evidence in defense. On September 27, 2011, the jury found defendant guilty of making a criminal threat against Mr. Harris as alleged in count 3. The jury also found true that the offense was a hate crime, and that defendant

---

**3**     All further undesignated section references are to the Penal Code.

used a deadly and dangerous weapon in the commission of the offense. The jury acquitted defendant on counts 1 and 2.

Defendant waived his right to a jury trial on the bifurcated prior conviction allegations. Defendant admitted the four prior strikes, as well as the prior prison terms under section 667.5, subdivision (b). A hearing was held on defendant's *Romero* motion, and testimony supporting defendant's motion was offered by defendant and his niece, Cassandra Reeves.

After entertaining argument from counsel, the court explained its ruling on the motion in some detail. At the outset, the trial court stated it had ordered all of the court files for the strike priors, including the probation reports, and had reviewed those records. The court also read the probation report prepared for the current offense. The court then explained that it was going to strike the 1992 burglary because the records revealed it was not a residential burglary, but a second degree burglary and therefore did not qualify as a strike.

The court stated it was declining to strike any of the three remaining strikes admitted by defendant because of the "overall pattern" of convictions and the "totality of the circumstances and the factual particulars of [defendant's] record, both felonies and misdemeanors," as well as his lack of family support and the seriousness of his present offense making him a risk to public safety. The court noted its concern with defendant's extensive history of criminal activity, including when defendant was a juvenile, much of it showing a "sophisticated" pattern of residential burglaries, a variety of crimes committed, as well as an apparent inability of defendant to reform his conduct. The court explained defendant had an "obviously unsatisfactory probation performance on both his informal probation and times he was granted formal probation, and then repeated parole violations when he was sent to prison for residential burglary and then ultimately released."

The trial court sentenced defendant to an aggregate state prison term of 44 years to life. Specifically, the court sentenced defendant as a third-strike offender, imposing a term of 25 years to life on count 3, plus two consecutive one-year terms as to the use of a

5

weapon and hate crime enhancements. The court also sentenced defendant to three consecutive five-year terms for the three prior convictions found true pursuant to section 667, subdivision (a)(1), and two consecutive terms of one year for the two prior prison terms found true pursuant to section 667.5, subdivision (b). The court awarded defendant a total of 1,020 days of presentence custody credits, and imposed various fines and fees.

This appeal followed.

## DISCUSSION

### 1. Substantial Evidence Supports the Judgment on Count 3

Defendant contends there is insufficient evidence supporting his conviction for making a criminal threat against Mr. Harris. Specifically, defendant argues testimony given at trial failed to establish that his *words* were taken as threats. Defendant further asserts that any alleged verbal threat made by him was as against "all of you [n----rs]" rather than personally directed at Mr. Harris. And, defendant argues Mr. Harris was "immune" to such threats as he had previously encountered defendant's verbal outbursts and was not bothered by them and was not placed in fear of defendant. We are not persuaded.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence--that is, evidence that is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) " 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' [Citation.]" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

6

The jury found defendant guilty of making a criminal threat to Mr. Harris. There is ample evidence in the record supporting the verdict. (§ 422[4]; see also *People v. Toledo* (2001) 26 Cal.4th 221, 227-228.) "A threat is an ' "expression of an intent to inflict evil, injury, or damage on another." ' [Citation.]" (*In re M.S.* (1995) 10 Cal.4th 698, 710.) " '[T]he determination whether a defendant intended his words to be taken as a threat, and whether the words were sufficiently unequivocal, unconditional, immediate and specific they conveyed to the victim an immediacy of purpose and immediate prospect of execution of the threat can be *based on all the surrounding circumstances and not just on the words alone*. [Citations.]' [Citation.]" (*People v. Butler* (2000) 85 Cal.App.4th 745, 754 (*Butler*), italics added.) "Thus, it is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be a basis for a violation of section 422." (*Id.* at p. 753.)

The jury heard the testimony of the victim, Mr. Harris, who testified defendant said "N----r, I'm -- I'm going to kill you." Based on these words alone, Mr. Harris testified he was "scared." He further explained the escalation in defendant's conduct that followed his initial verbal threat. He said defendant retrieved a "sword/knife" and a "hatchet" from his house, came back outside with both weapons in hand and came directly at Mr. Harris and to within about 10 feet of him. Defendant, at that close range, then repeated "I'm going to kill you n----r." At that point, Mr. Harris ran away and called 911. He relayed the threats to the 911 operator, and expressed that he was still scared and

---

[4]    Penal Code section 422, subdivision (a) provides: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

unsure whether defendant was going to come at him again. The 911 call was played to the jury.

Defendant's contention the threats consisted of conduct and not words is untrue, as the actions of defendant immediately after making his verbal threat gave meaning and context to his words (not that any explanation is needed to understand the words "I'm going to kill you"). (*Butler, supra*, 85 Cal.App.4th at p. 753.) The jury unquestionably had sufficient evidence before it to find defendant made a specific verbal threat to Mr. Harris, given that the words relayed an explicit death threat and then defendant approached Mr. Harris with deadly weapons in hand exhibiting an apparent intent to act on the threat. The conduct that accompanied the words reasonably placed Mr. Harris in a position of believing the verbal threat was not an idle one.

Defendant's assertion the threat was not made to Mr. Harris personally, but rather was more generally addressed to "all of you [n----rs]," is equally unavailing. The record speaks for itself. Mr. Harris's testimony unequivocally indicates defendant first stood at the front door of his home and yelled "N----r, I'm – I'm going to kill you" as Mr. Harris walked past, and he then approached Mr. Harris with two weapons and repeated that same threat.

The argument that Mr. Harris was "immunized" to such behavior by defendant is also without merit. Defendant's argument, in essence, challenges the reasonableness of Mr. Harris's fear based on previous interactions between the two men. Mr. Harris had seen defendant in the neighborhood on other occasions, talking to himself and making generalized racial slurs.

However, Mr. Harris's testimony concerning his interaction with defendant on March 29, 2010, established that defendant behaved starkly differently on that date. Defendant made an explicit death threat while he was carrying, and posturing with, two deadly weapons, and came directly at Mr. Harris. (*People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1162 [rejecting substantial evidence challenge where fear of victim was reasonable because threatening communication from the defendant was "concededly different" from earlier communications and contained an explicit death threat].)

8

Defendant's behavior in this instance was decidedly different from any of defendant's outbursts witnessed by Mr. Harris on previous occasions and the jury could find that Mr. Harris reasonably felt his life was in danger and was placed in sustained fear within the meaning of the statute.

There is solid evidence supporting the jury's verdict, and defendant has failed to show any basis for disturbing it. (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245 [" 'Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it' "].)

## 2. Denial of the *Romero* Motion Was Well Within the Court's Discretion

Defendant contends his *Romero* motion was wrongfully denied. We review a court's ruling on a *Romero* motion under the deferential abuse of discretion standard. (*People v. Williams* (1998) 17 Cal.4th 148, 162 (*Williams*); accord, *People v. Myers* (1999) 69 Cal.App.4th 305, 309-310 (*Myers*) [A defendant must demonstrate the "court's decision was irrational or arbitrary. . . . Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling."].) We find no abuse in the court's ruling below.[5]

Pursuant to section 1385, the trial court has the authority to dismiss a prior strike allegation in the interests of justice. (*Romero*, *supra*, 13 Cal.4th at p. 504.) In determining whether a prior strike under the Three Strikes law is properly dismissed, the court "must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects, the defendant may be

---

[5]     Defendant requested we take judicial notice of the probation reports related to defendant's prior convictions which were referenced by the court in explaining its ruling. We have granted defendant's unopposed request. (Evid. Code, § 452, subds. (c), (d).) By separate order, we also ordered transmission to this court of the court files relied upon by the trial court in making its ruling.

deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161.)

At the hearing on defendant's motion, the court thoroughly explained its consideration of the pertinent facts and the basis for its decision to strike the one burglary, but to not strike any of the other three admitted priors. The court properly weighed factors related to the offense committed in the instant case, defendant's prior strikes for burglary and attempted burglary, and the balance of his criminal history, as well as defendant's background, character, and prospects. The court explained the seriousness of defendant's present conviction for making criminal threats coupled with the use of a deadly weapon "cause[d] [the] court concern in terms of public safety issues."

In addition, the court pointed out the seriousness of defendant's prior strikes, noting the prior convictions for residential burglary and attempted residential burglary, were "fairly sophisticated offenses" that "involved a sophisticated pattern concerning a number of homes, [and] concerning a number of victims." The court also expressed concern with defendant's inability to reform his conduct over an extensive time frame, noting the consistency of criminal activity dating from when defendant was a juvenile up through 2008, and then the current offense in 2010. The court explained defendant's history included charges for driving under the influence, weapons possession, hit and run, battery, domestic violence, exhibiting a weapon, and drug convictions. The court highlighted defendant's "obviously unsatisfactory probation performance" and "repeated parole violations."

The court expressed concern about defendant's "lack of family support" and acknowledged defendant's apparent battle with some mental health issues, but explained its duty to counterbalance public safety and other relevant issues. "[T]he court also has to balance these other factors, which I have."

The court's explanation of its ruling belies defendant's contention the court somehow improperly relied only on the probation reports to determine that defendant had

not shown any "concerted action" to complete a program for drug rehabilitation or to consistently seek mental health care, and that that finding was the sole reason for denying the balance of defendant's motion.

The record does not support defendant's contention the court misunderstood the applicable law, failed to balance all relevant factors or improperly relied on only one factor in making its ruling. (*Myers*, *supra*, 69 Cal.App.4th at p. 310 [trial court is "presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary" and fact court focuses "explanatory comments" on one or certain factors does not mean the court only considered those factors].) To the contrary, the court heard all of the testimony relevant to the present offense; the court listened to the testimony of defendant and his niece presented in support of defendant's motion; the court explained it had obtained the files of the prior strikes and reviewed the relevant records and the probations reports; and the court noted its review of the probation report for the present offense. The court thoroughly and properly balanced all relevant factors and was well within its discretion in finding that defendant's history and present offense placed him within the spirit of the Three Strikes law for sentencing purposes. Defendant has not shown that the court's decision was arbitrary or irrational.

## DISPOSITION

The judgment of conviction is affirmed.

GRIMES, J.

We concur:

BIGELOW, P. J.

RUBIN, J.

11