Filed 7/29/15  P. v. Carlisle CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C076586 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F05221) |
| v. | |
| CHRISTOPHER DEWAYNE CARLISLE, | |
| Defendant and Appellant. | |

In this case, defendant Christopher Carlisle contends the evidence did not support the jury's findings that he committed assault, battery, and hate crimes because, according to defendant, no reasonable juror could have found that he was not acting in self-defense. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

During the summer of 2013, the victim, Rolando Belloso, visited his then-girlfriend, Natina Belloso, at the casino in which she worked.  Defendant and his companion were at a table and defendant was being angry and rude toward the dealer and

1

other players. When Rolando arrived, Natina gestured him over. After Rolando reached Natina, defendant yelled, "You fucking Mexican." He began talking about Florida, Zimmerman, and Trayvon Martin. Rolando heard "fucking Mexican" said repeatedly. Rolando did not engage with defendant beyond asking defendant if he was "for real." Rolando went away from the table and sat down. Defendant continued to yell "fucking Mexican" and indicated he wanted to fight Rolando. Natina called for her boss and for security. A security guard told Rolando to wait outside. Defendant was told he could continue playing in the casino if he calmed himself. Instead, defendant stared at Natina and called her a "fucking cracker bitch" and a "cracker whore." Natina called security back to the table and security moved to eject him from the casino.

At this point, Rolando went to his car, retrieved what he testified to was a Taser, and put it in his pocket. After some time had passed, he went to reenter the casino. Defendant was being led out by security, still yelling "fuck the white people, fuck the Hispanic." Rolando moved to step out of the way. As defendant passed Rolando, defendant swung his fist and struck Rolando on the right side of his jaw. Rolando stumbled outside. Nicholas Kielborn, a security guard for the casino, grabbed Rolando in an attempt to stop a fight from breaking out. He felt Rolando tugging at something in his belt line. He saw what he testified to was the blue finish, hammer, and "dovetail" of a gun in Rolando's waistband. Defendant and his companion ran to their truck, while defendant yelled "that's right, that's right," "fucking . . . Mexican," and "spic," and drove away.

Kielborn testified that Rolando told him that he needed to "get this to [Rolando's] car," apparently in reference to his weapon. Kielborn walked Rolando to his car and watched as Rolando put the weapon into his trunk. Kielborn testified that Rolando's weapon was a semiautomatic pistol. An ambulance was called for Rolando and Rolando was taken to the hospital where surgery was performed on his broken jaw.

Following a preliminary examination, defendant was held to answer. Defendant was charged with assault by means of force likely to produce great bodily injury and use of force resulting in the infliction of serious bodily injury. Both charges were enhanced with allegations that defendant personally inflicted the injury and that the offenses were hate crimes. The jury returned a verdict finding defendant guilty of both assault and battery, and each enhancement true. Defendant was sentenced to seven years in prison. This appeal followed.

DISCUSSION

I

*The Jury's Findings That Defendant Committed Assault And*

*Battery Are Supported By Substantial Evidence*

Defendant contends that no reasonable juror could have found, beyond a reasonable doubt, that he was not acting in self-defense when he struck Rolando. The crux of defendant's argument is that "[Rolando's] testimony at trial [that he did not have a gun] completely discredited him" because Kielborn's unbiased testimony established that Rolando actually was carrying a gun. Defendant argues that because Rolando's testimony is discredited, the inference that must be drawn from the remaining evidence is that defendant was acting in self-defense, in that the only reason Rolando could have had for wanting to put the gun away was he had been planning on using it to harm defendant, and defendant could only have known Rolando had a gun if Rolando had done something prior to the assault to put defendant in fear that it would be used to harm him.

Defendant's attack on Rolando's credibility is without merit. We "view the [record on appeal] in the light most favorable to the respondent . . . ." (*Estate of Isenberg* (1944) 63 Cal.App.2d 214, 216.) "[W]e do not resolve conflicts in the evidence, pass on the credibility of witnesses, or determine where the preponderance of the evidence lies. [Citation.] We merely determine if there is any substantial evidence, contradicted or not, which will support the conclusion of the trier of fact." (*In re Adoption of Myah M.*

3

(2011) 201 Cal.App.4th 1518, 1539.)  That the evidence may support a finding that defendant acted in self-defense does not mean the evidence is insufficient to support a finding that defendant did not act in self-defense.  " ' " '[I]t is the exclusive province of the . . . jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " ' " (*People v. Jackson* (2014) 58 Cal.4th 724, 749.)  " '[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' "  (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

The People were required to prove beyond a reasonable doubt that defendant did not act in self-defense.  " 'To justify an act of self-defense for [an assault charge . . .], the defendant must have an honest and reasonable belief that bodily injury is about to be inflicted on him . . . .'  The threat . . . must be imminent . . . and '. . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances.' " (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064-1065, italics omitted.)  Here, there was sufficient evidence from which a jury could reasonably conclude that defendant was not acting in self-defense when he struck Rolando.  Defendant had been treating Rolando with hostility from the moment he first saw Rolando.  He insulted Rolando and challenged him to a fight.  As defendant was being led out of the building, he continued to yell racist remarks.  Kielborn testified that Rolando was "walking normally and just continuing with his normal way to walk in," as he reentered the casino.  Regardless of whether Rolando was carrying a gun or a Taser, no one testified as to any awareness of a weapon or of threatening actions by Rolando until, at the earliest, immediately after Rolando had been struck and he reached for his weapon.

In *People v. Dinkins* (1966) 242 Cal.App.2d 892, Division Three of the Second District rejected a claim of self-defense in another case with conflicting testimony.  (*Id.* at p. 904.)  The victim testified that he arrived at the home of his wife, with whom he was going through a divorce, and saw her "embracing and kissing" the defendant.  (*Id.* at

4

pp. 896-897.)  According to the victim's testimony, the defendant ran out of the home, quickly returned with a gun, and shot the victim.  (*Id.* at p. 897.)  The victim's wife testified that she was not touching the defendant at all and when the victim entered the home, he ordered the defendant to leave, kicked the defendant, and picked up a knife, at which point the defendant shot him in self-defense.  (*Id.* at p. 898.)  In light of this conflicting testimony, the trier of fact in that case, "[i]n performance of [its] function of determining the credibility of the witnesses . . . , was free to reject the claim of self-defense . . . ."  (*Id.* at p. 904.)

The same is true here.  On the evidence presented, viewed in the light most favorable to the People, the jury could have reasonably found that defendant was not acting in self-defense when he suddenly struck Rolando in the jaw as they were passing at the door of the casino.

II

*The Jury's Findings That Defendant's Assault And Battery Were Substantially Motivated By Rolando's Perceived Ethnicity Are Supported By Substantial Evidence*

Defendant challenges the jury's finding that he committed hate crimes.  The jury was instructed to find the hate crime enhancements true if they found that defendant "committed th[e] crime in whole or in part because of the alleged victim's actual or perceived nationality, race or ethnicity, or association with a person or group having one or more of those actual or perceived characteristics.  [¶] . . . [¶]  [T]he bias . . . must have been a substantial motivating factor . . . , not . . . the only factor . . . ."  Insofar as defendant argues the hate crime enhancements are unsupported by substantial evidence because he was acting in self-defense, that argument is dealt with in the preceding section.  The jury did not act improperly by finding that defendant was not acting in self-defense.

Defendant also argues that, when yelling out phrases like " 'fuck a cracker' " and " 'fuck a Mexican,' " he was simply "yelling out the race of anyone who had irked him

5

that evening," rather than "targeting [Rolando] because of his race . . . ." While that may be one interpretation of the evidence, it is not the place of this court to choose one interpretation over the other. Here, as in the discussion above, the role of this court is to "determine if there is any substantial evidence, contradicted or not, which will support the conclusion of the trier of fact." (*In re Adoption of Myah M.*, *supra*, 201 Cal.App.4th at p. 1539.) There is sufficient evidence in the record to support the findings of the jury.

In *In re M.S.* (1995) 10 Cal.4th 698, our Supreme Court rejected a claim by the defendants that the evidence was insufficient to support the juvenile court's finding that they committed a hate crime. (*Id.* at pp. 727-728.) In that case, the defendants "shout[ed] antigay epithets[ and] threaten[ed] to 'beat up' [a group of] gay men" before physically attacking them. (*Id.* at p. 708.) "[T]he victims testified to the violence and threats of violence committed by the [defendants], together with the antigay epithets they uttered, evidencing prohibited bias motivation. On this record, the . . . court could reasonably find the [defendants] acted with the specific intent required . . . ." (*Id.* at pp. 727-728.) Similarly, in this case, Rolando and others testified that defendant threatened violence and made racist and insulting remarks before physically attacking Rolando. Based on this record, the jury could reasonably find that defendant's bias was a substantial motivating factor in his attack on Rolando.

DISPOSITION

The judgment is affirmed.

    ROBIE    , J.

We concur:

    NICHOLSON    , Acting P. J.

    BUTZ    , J.