Filed 12/4/24  County of Los Angeles v. Herman CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| COUNTY OF LOS ANGELES, | B333177 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 23STRO04616) |
| v. | |
| ARMANDO HERMAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gary Eto, Judge.  Affirmed.

Armando Herman, in pro. per., for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kent M. Sommer, Deputy County Counsel; Greines, Martin, Stein & Richland, Edward L. Xanders and Tina Kuang, for Plaintiff and Respondent.

_____

Appellant Armando Herman is the subject of restraining orders obtained by respondent County of Los Angeles (County). The law permits County to apply for restraining orders on behalf of employees who face a credible threat of violence. (Code Civ. Proc., § 527.8.)[1] We conclude that neither the proceeding nor the restraining order violated Herman's constitutional rights. Substantial evidence shows that Herman threatened County employees in a way that would cause a reasonable person to fear harm and served no legitimate purpose. We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

County filed for restraining orders in July 2023, seeking to protect five employees from Herman. The employees, all women, are members of the County's Board of Supervisors and a field deputy. The petitions allege that Herman is stalking and threatening to commit sexual violence against them. He listed their home addresses in a written threat. County asked the court to order Herman to stay at least 100 yards from the employees' workplaces and homes.

The court issued four restraining orders. Acting in propria persona, Herman has appealed the order in Los Angeles County Superior Court case number 23STRO04616, which pertains to County Supervisor Hilda Solis and her deputy, Maria Ponce. Because Herman did not appeal the restraining orders protecting County Supervisors Janice Hahn, Kathryn Barger, and Holly Mitchell, they are final and binding: They prohibit Herman from approaching the supervisors' homes and places of work, and require that he participate remotely in board meetings.

---

[1] Undesignated statutory references in this opinion are to the Code of Civil Procedure.

2

## The Petition for a Restraining Order

In support of Solis's petition, her chief of staff declared that Herman approached staff members in public on August 21, 2021, screamed and yelled vulgarities at them, and acted in a threatening manner. On March 30, 2022, Herman demanded to speak with Solis at a public event, then drew close and screamed obscenities. On May 13, 2022, Herman approached the chief of staff as she parked her car, prevented her from stepping away from him, called her a "bitch," and screamed, "You better be ready because I plan to make Solis' day!" When Solis spoke at the event, he came close to her at the podium, yelled, and made gestures suggesting that he might become violent. He calls and e-mails Solis's office multiple times a day, intimidating staff members by saying he is watching them, using racist and sexually offensive language. On November 30, 2022, Herman left a voice mail indicating that he was surveilling a member of Solis's staff from outside the building at the end of the workday.

Supervisor Solis declared that she is familiar with Herman. He attends meetings of the Board of Supervisors, where he makes offensive comments and displays a swastika. He sent an e-mail to Solis on July 9, 2023, reading, "I hear Hilda Solis has a delicious pussy. Would Hilda Solis like me to eat her delicious pussy at [Solis's home address]?"[2] Solis declared that this was an escalation of his behavior because it shows that he has located her home. She fears for her safety.

---

[2] The e-mail came from armandoherman@proton.me. Herman claimed he was being impersonated by a cybercriminal and denied sending the message.

Ponce declared that she is familiar with Herman, who frequently interacts with her and other staff members. He calls them multiple times a day, using derogatory, profane, and vulgar language. In October 2022, he threatened to run over and kill a County inspector. He exhibits aggressive behavior at public events. In July 2023, Herman sent Ponce a message reading, "im gonna fuck u in ur asshole until u bl[eed]." Ponce became extremely concerned for her safety, fearing that he will commit an act of violence against her.

The court issued a temporary restraining order in July 2023. It prohibited Herman from approaching the employees at their homes and workplaces, but did not bar him from public meetings.

### The Hearing for a Permanent Restraining Order

Herman, Solis, Ponce, and other County employees— including other County supervisors—testified at a hearing on September 14, 2023. Herman opposed the petitions and denied sending e-mails threatening the supervisors with sexual violence. He did not raise any objections under the Evidence Code to the written messages.

Chief of staff Cindy Chen testified about her interactions with Herman. At a public event, Herman "cuss[ed] us out" and said, "I'm going to fuck with you," "I'm going to fuck you up." He called Chen a "skinny Asian bitch," a "cunt," and a "pussy." He yells and comes close to staff members. At another event, he approached Chen and said, "I'll make sure that I'm going to fuck up with you if you . . . are not being careful." He was so close that Chen could smell him and feel his breath; she worried that he might sic his dog on her. Chen feared for herself, Solis, and other staff members at these events. She felt "cornered."

4

At events, Herman sat in an off-limits, reserved section to be next to Solis and ensure that she and her staff would be uncomfortable. During Solis's speech, he came close to the podium to cuss and disrupt her. He told Chen he was "going to make our day" and "derail our event."

Chen testified that Herman constantly telephoned Solis's office. He would intimidate them by saying, "I'm going to fuck you up," and using vulgar names for women. They received an e-mail from Herman threatening sexual violence on a Sunday, causing them fear. Matters improved after the court issued the temporary restraining order against Herman.

On cross-examination, Chen testified that she believed the threatening e-mail came from Herman because it was "very consistent" with what he had said to her. His profane outbursts have been witnessed by other staff members.

Ponce testified that she organizes events and addresses concerns raised by constituents. Herman began calling Ponce in 2021, saying he was "our boss now." His constant calls are disturbing, degrading, and dehumanizing, insulting and vulgar. He uses the words "nigger" and "wetback" when he speaks to her. Herman likes to linger in the shadows at public events, to let staff members know that he is there.

When Herman approaches them at public events, it is never to seek resources but to insult them. He "tries to get in your face" and intimidate them. Ponce became "really concerned" when she received a message from Herman threatening to "fuck you in your asshole until you bleed." She felt a line was crossed, and was unsure if she could be safe when she was out in the community. It was more frightening than insults or degrading comments. Since the temporary restraining order issued,

Herman has stopped calling the office or interacting with staff. Ponce would not feel safe fulfilling her work duties without it.

On cross-examination, Ponce said she is unfamiliar with proton.me. (See fn. 2, *ante*.) She believes Herman's proton message was "a direct threat of rape." His overbearing manner, such as standing too close, indicates that "things [are] escalating in the direction of that message."

Barbara Garcia Vera, Solis's administrative director, testified that she oversees staff at County's main office. She had Herman's voice mail messages transcribed. Herman calls "pretty much . . . every day." She and her staff "absolutely" fear interacting with Herman, and reported him to the sheriff.

In August 2022, Herman called a staffer a "fucking cunt" in a voice message. He left a lengthy message about his suffering, using terms like "kill," "strangle," "lynch," and "shoot," describing the demon in his head, and "the voice in your head says to kill." In April 2023, Herman left a message calling staff "dumb motherfuckers" and "niggers." He asked if staff received his e-mails because he planned to send more. In July 2023, he referred to staff and others using racist and derogatory terms.

Solis testified that she has personally interacted with Herman. He repeatedly calls her office to berate female staffers. He says he has their license plate numbers and knows what kind of cars they drive, adding, "I can see that there's an accident that can happen to you." It causes them humiliation, emotional suffering, and fear. Solis does not feel safe because "he has stalked me." Though her office tries to assist him, he does not listen, "and it seems to have gotten a lot worse."

Solis said that Herman seeks out women for intimidation. Though he has a right to speak, he cannot "come into my space,"

6

or "shout down every word I say in a public setting."  Solis was alarmed by Herman's e-mail threatening sexual violence against her and notified the sheriff.  She feared for her safety because it included her home address.[3]  He stalks her by showing up at public events and puts his camera in her face.

Since the temporary restraining order was issued, Solis and her staff feel less intimidated because Herman's abuse has quieted down.  Solis worries that her staff will quit if Herman is able to resume his intimidation and harassment.  On cross-examination, Solis stated that "everyone has the right to speak but not in the tone and manner that Mr. Herman has displayed and demonstrated," which was intimidating, offensive, and scared not just Solis and her staff but members of the public who attend events.[4]

Herman testified that he did not send e-mail messages to the supervisors at 7:00 a.m. on a Sunday, when the public libraries he uses for e-mails were closed.  He agreed that much of the testimony the court heard was "true"; however, he denied sending threatening messages.  He opined that his "vulgar, venomous, caustic, robust" language was not threatening or intimidating.  He admitted to using proton for e-mail messages, but asserted that County failed to prove he sent sexually threatening messages on proton to the supervisors.  He said, "I'm

---

[3] Other County supervisors received the same e-mail from Herman with their home addresses, and felt threatened.  The message was consistent with his verbal attacks on female supervisors and staff.

[4] Supervisor Mitchell testified that Herman uses racist language and degrading epithets for women at board meetings, in front of children, while wearing a swastika.

targeted for using proton." He objected to being barred from public meetings or events.

Herman's witness Michael Greenspan denied that Herman was aggressive at an event at a park held by Solis and her staff, or at public meetings, though he has seen Herman use profane language and be escorted from the room by sheriffs. Greenspan testified that he had an argument with Cindy Chen at the same event at the park. Greenspan created a swastika for Herman to wear at meetings.

## The Permanent Restraining Order

The court stated that it evaluated the demeanor of all the witnesses, including Herman, and found County's witnesses credible. They testified that Herman has engaged in misconduct for years. The court found that Herman presents a credible threat of violence and engaged in a course of conduct that would place a reasonable person in fear for themselves or their family, and serves no legitimate purpose. "A reasonable person could conclude that Mr. Herman obtained and used the supervisors' address[es] so that they would know Mr. Herman could find their residence." Witness testimony showed repeated direct threats, which are likely to recur without a restraining order. This is not constitutionally protected speech because it indicates an intent to intimidate by threatening violence.

The court granted a three-year permanent restraining order barring Herman from harassing, intimidating, molesting, attacking, striking, stalking, threatening, assaulting, hitting, abusing, destroying property of, or disturbing the peace of Solis and Ponce. He cannot "[c]ontact the person, either directly or indirectly, in any way, including, but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice

8

mail, by e-mail, by text message, by fax, or by other electronic means [or] [t]ake any action to obtain the person's address or location. Peaceful written contact through a lawyer or process server or other person for service of legal papers related to a court case is allowed." He must stay at least 100 yards away from the protected persons' homes, workplaces, vehicles, and their children's school. Herman "may only participate in Board meetings remotely."

## DISCUSSION

### 1. Appeal and Review

The restraining order is appealable. (§ 904.1, subd. (a)(6).) We must affirm the trial court's finding of a credible threat of violence if it is supported by substantial evidence. We resolve all factual conflicts and questions of credibility in favor of the prevailing party, draw all inferences in favor of the court's findings, and determine whether substantial evidence— contradicted or uncontradicted—supports the order. (*City of Los Angeles v. Herman* (2020) 54 Cal.App.5th 97, 102 (*Herman*); *City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 538.)

### 2. Due Process Claims

Herman contends that he was deprived of a fair trial. Proceedings under section 527.8 " 'are procedurally truncated, expedited, and intended to provide quick relief to victims of civil harassment.' " (*CSV Hospitality Management, LLC v. Lucas* (2022) 84 Cal.App.5th 117, 122.) Respondents have the right to present their case and cross-examine witnesses. (*Id.* at pp. 123– 124.) Here, Herman had notice, attended the hearing, cross-examined witnesses, testified on his own behalf, presented a witness, and argued to the trial court. He had a fair trial. (*Herman, supra,* 54 Cal.App.5th at p. 105.)

9

Herman complains that "before the trial began" the courtroom was "locked to the public," which violated his right to a public trial. Herman does not point to any part of the record showing that a motion to exclude was granted, or that the courtroom was locked during trial, or the public was excluded. (See *Herman, supra,* 54 Cal.App.5th at p. 103, fn. 3 [appellant has the burden of showing the basis for his claim of error].) Nor does the record show that Herman objected to excluding the public if, in fact, that is what happened. He has forfeited the argument for review on appeal.

Herman asserts that County failed to produce exculpatory evidence favorable to him; for example, he claims County did not disclose information about the proton e-mail account bearing his name. No evidence in the record shows that County withheld exculpatory evidence, or that County believed Herman did not send messages using the proton account. Herman's claim to the contrary is mere speculation. He admitted to sending County e-mails using a proton account and testified that he was "targeted" for using proton.

### 3. Sufficiency of the Evidence

#### a. Section 527.8 and the First Amendment

The First Amendment does not shield threats of criminal conduct. (*City of San Jose v. Garbett, supra* 190 Cal.App.4th at pp. 536–537; *Herman, supra,* 54 Cal.App.5th at pp. 103–104.) When speech strays "from the values of persuasion, dialogue and free exchange of ideas, and moves toward willful threats to perform illegal acts, the state has greater latitude to regulate expression." (*In re M.S.* (1995) 10 Cal.4th 698, 710.) Statements that place a person in fear for his or her safety fall outside the scope of the First Amendment. (*Herman*, at p. 104.)

Consistent with constitutional limits on making threats, section 527.8 authorizes injunctive relief to prevent acts of workplace violence. (*USS-Posco Industries v. Edwards* (2003) 111 Cal.App.4th 436, 443, 445.) The court determines if there is "a credible threat of violence from any individual." (§ 527.8, subd. (a).) A credible threat of violence is a statement or course of conduct that would place a reasonable person in fear for their safety, or the safety of their family, and serves no legitimate purpose. (*Id.,* subd. (b)(2).) The course of conduct must show, over time, a continuity of purpose, including stalking employees at work, entering the workplace, and making telephone calls or sending correspondence to employees. (*Id.*, subd. (b)(1).)

### b. Herman Has Forfeited His Claims

A judgment is presumed to be correct. The appealing party has the burden to demonstrate reversible error, which requires " 'adequate argument including citations to supporting authorities and to relevant portions of the record.' " (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 619–620.) A self-represented appellant must conform to the same standards, and provide necessary citations to the record. (*Id.* at p. 620; *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985.)

" '[A]n attack on the evidence without a fair statement of the evidence is entitled to no consideration when it is apparent that a substantial amount of evidence was received.' " (*L.O. v. Kilrain, supra,* 96 Cal.App.5th at p. 620.) "By failing to accurately discuss the record, [appellant] did not provide a fair statement of the evidence. [He] also fails to support his arguments with the appropriate legal authority and reasoned arguments. He has thus forfeited his claims that the orders were erroneously issued." (*Id.* at p. 621.)

11

At the hearing on County's petition, witnesses were examined and cross-examined.  There is a reporter's transcript, but Herman did not cite it.  Apart from failing to cite the record, Herman raised no objections under the Evidence Code to e-mails and other documentary evidence offered by the County, thereby forfeiting any challenge to them.  (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 530–532.)

### c.  Substantial Evidence Supports the Order

If we reach the merits of the appeal, we conclude that substantial evidence supports the restraining order.  Herman continues to insist, as he did at trial, that he did not send sexual messages that included home addresses.  The trial court heard the testimony, including Herman's testimony, and observed the demeanor of the witnesses.  It did not find Herman credible.  We do not judge witness credibility on appeal.  (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1067.)

Herman's brief focuses solely on messages sent from a proton e-mail account.  These messages justify a restraining order because they show an intent to commit sexual assault at an official's home.  "A reasonable person could conclude that Herman disclosed [an official's] address so that [she] would know Herman could find [her] residence."  (*Herman, supra,* 54 Cal.App.5th at p. 102.)  Disclosure of a residence address, combined with threats to "fuck with" an official, support a conclusion that the threats could reasonably be viewed as serious.  (*Id.* at pp. 102–103.)

The trial court based its ruling on "the totality of the circumstances, not just one e-mail, not just one text message."  Herman's course of conduct goes beyond the e-mail messages.  The testimony shows multiple threats from Herman over several

years, none of which he denied.  Herman repeatedly intimidated Solis and her staff, cornering them at public events to meet constituents; approaching Solis in a threatening manner as she gave a speech; yelling at her and others in meetings; surveilling them at their workplaces; saying he is going to "make Solis's day" and kill a County inspector; invading their personal space; saying he is "going to fuck you up"; lingering in the shadows while they are working in public; using dehumanizing language; taking down staffers' license plate numbers and saying they will have an "accident"; and leaving a voice mail laden with violent language like "kill," "strangle," "shoot," and "lynch."  His behavior and words frightened County's employees and members of the public seeking to attend events held by the employees.

The court could find that Herman's language and behavior were escalating and would place a reasonable person in fear of harm.  It served no legitimate purpose other than to terrorize.  The sexually threatening messages received by Solis and Ponce are consistent with the language Herman used when addressing women.  His manifestations of hatred toward female employees pose a credible threat that he would commit an act of violence against persons he sees as vulnerable.

## DISPOSITION

The order is affirmed.  The County of Los Angeles is entitled to its costs on appeal.

NOT TO BE PUBLISHED.


                                    LUI, P. J.

We concur:



ASHMANN-GERST, J.



CHAVEZ, J.


14